# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN D. WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2235** |
| **DARRYL VANNOY** | **SECTION: "J"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Steven Williams, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. On October 22, 2010, Williams was indicted in the Parish of Orleans for three counts of armed robbery with a firearm.[1] On September 27, 2011, the State severed the third count. Williams was tried before a jury on September 27, 2011, and was found guilty of counts one and two.[2] Williams' motion for new trial was denied.[3] The State filed a multiple bill under Louisiana's Habitual Offender Law (La. Rev. Stat. § 15:529.1).[4] At a hearing

---

[1] St. Rec. Vol. 1 of 4, Bill of Information, 10/22/10.
[2] St. Rec. Vol. 3 of 4, Trial Transcript, 9/27/11; Jury Verdicts, 9/27/2011.
[3] St. Rec. Vol. 2 of 4, Motion for New Trial, 12/1/11; St. Rec. Vol. 3 of 4, Sentencing Transcript, p. 15, 2/15/12.
[4] St. Rec. Vol. 2 of 4, Multiple Bill, 9/28/11.

on February 15, 2012, the state trial court found Williams to be a second multiple offender and sentenced him to a term of imprisonment of fifty years as to count one and twenty-five years as to count two.[5]  Both sentences were to run concurrently with any other sentence and to be served at hard labor without the benefit of probation, parole or suspension of sentence. [6]  Petitioner's motion to reconsider sentence was denied. [7]  The third count was subsequently nolle prosequied on March 1, 2012.[8]

Williams filed a direct appeal to the Louisiana Fourth Circuit, alleging the following claims: (1) the trial court erred in denying his motion for new trial; (2) insufficient evidence supported his convictions; and (3) the sentences were excessive. [9]  The court denied petitioner's appeal on April 10, 2013.[10]  Williams then filed a writ application to the Louisiana Supreme Court which was denied on November 15, 2013, without explanation.[11]  Williams' conviction became final 90 days later, on February 13, 2014, when he did not file a writ application with the United States Supreme Court.[12]

On May 30, 2014, petitioner filed an application for post-conviction relief with the state district court in which he raised the same issues as he raised on appeal as well as five claims of ineffective assistance of counsel and a claim that he was entitled to an evidentiary hearing. [13]  The state trial court denied petitioner's application on June 11, 2014, finding petitioner's "claims are

---

[5] St. Rec. Vol. 3 of 4, Sentencing Transcript, 2/15/12.

[6] Id.

[7] St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence, 2/15/12; Order, 2/15/12; St. Rec. Vol 3. of 4, Sentencing Transcript, p. 15, 2/15/12.

[8] St. Rec. Vol. 1 of 4, Bill of Information with handwritten notes as to Count Three, 3/1/12.

[9] St. Rec. Vol.1 of 4, Appeal Brief, 2012-KA-0835, 7/13/12.

[10] St. Rec. Vol. 2 of 4, 4th Cir. Order, 2012-KA-0835, 4/10/13; State v. Williams, 12-083 (La. App. 4th Cir. 2013).

[11] State v Williams, 125 So.3d 1101 (La. 2013); St. Rec. Vol 4 of 4, La. Supreme Court Order, 2013-KO-1011, 11/15/13.

[12] See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(a).

[13] State Rec. Vol. 1 of 4, Application for Post-Conviction Relief, signed 5/30/14.

not supported by the record."[14]  The Louisiana Fourth Circuit Court of Appeal denied petitioner's application for supervisory writ finding "no error in the judgment of the trial court denying relator's application for post-conviction relief on June 11, 2014."[15]  The Louisiana Supreme Court denied petitioner's application for review without stated reasons.[16]

Petitioner thereafter filed the instant federal application seeking *habeas* corpus relief alleging the following claims: (1)  the trial court erred in denying his motion for new trial predicated on the following evidentiary rulings: (a) the admission of the victim's in-court identification of Williams; (b) the admission of the alleged threat by Williams; and (c) the inadmissibility of petitioner's post-arrest statement that he found the phone; (2) the evidence was insufficient to support his convictions; (3) the sentences imposed were excessive; (4) violation of his right to confront witnesses; (5) the cumulative effect of errors at trial violated his right to due process; (6) ineffective assistance of counsel in failing to present a defense of actual innocence; (7) ineffective assistance of counsel in failing to investigate the case; (8) ineffective assistance of counsel in failing to challenge the credibility of the state's eyewitness; (9) ineffective assistance of appellate counsel in failing to appeal the sufficiency of the evidence; (10) ineffective assistance of counsel in failing to file a motion for severance of counts; and (11) he is entitled to an evidentiary hearing to address his ineffective assistance of counsel claims.[17]

The state does not challenge the timeliness of petitioner's application.  The state argues that petitioner's claims related to the admissibility of his post-arrest statement that he found the phone and the violation of his right to confront witnesses are procedurally barred.  The state

---

[14] St. Rec. Vol. 1 of 4, Judgment, 6/11/14.

[15] St. Rec. Vol. 4 of 4, 4th Cir. Order, 2014-K-0874, 8/28/14; State v. Williams, No. 2014-K-0874, (La. App. 4th Cir. 2014).

[16] State ex rel. Williams v. State, 171 So.3d 930 (La. 2015); St. Rec. Vol. 4 of 4, La. Supreme Court Order, No. 2014-KH-1946, 6/1/15.

[17] Rec. Doc. 4.

continues that if petitioner's claim related to the admissibility of threats could be construed as a federal claim, he failed to exhaust it.  The state asserts the remaining claims lack merit.[18]

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

---

[18] Rec. Doc. 13.

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." <u>White v. Woodall</u>, 530 U.S. ____, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

<u>Id.</u> (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one." <u>Bell</u>, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

<u>Harrington v. Richter</u>, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); <u>see also</u> <u>Renico v. Lett</u>, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of

this case as follows:

> At the beginning of trial, the assistant district attorney ("ADA") and defense counsel entered into a stipulation as to a 911 tape; the tape was played for the jury.
>
> New Orleans Police Department ("NOPD") Officer William Mullaly testified that on 21 August 2010 he was assigned to night watch, and he responded to a 64G call at the corner of Canal and North Robertson Streets.  The officer explained that the 64G signaled an armed robbery with a gun.  He stated that the area is usually very busy because it is Canal Street, close to the French quarter.  The area is well-lit with people flowing back and forth; vehicular and pedestrian traffic is present.  When the officer arrived at the intersection he saw Michael Hill, the "nervous, excited and very upset" victim, standing at the intersection.  Mr. Hill described the perpetrator of the robbery as a black male approximately six feet tall and between the ages of eighteen and twenty-four, wearing a red Arizona Diamondback's hat, a black t-shirt, jeans and brown boots.  Mr. Hill also said the robber had two tear drop tattoos on his face, and he ran toward the Iberville Housing Project that was a block away.  Officer Mullaly said that the second victim arrived during that conversation.  When he asked if the second victim (Che Jones) corroborated what the first victim had said, Officer Mullaly replied: "Yes."
>
> On cross-examination, the officer stated that he did not recall where the tattoos were, but that his report should reflect the information.  He agreed that one of the victims said that he saw a brown (wooden) and chrome gun handle.  The officer agreed that the robber stole a Blackberry cell phone, a silver necklace, and two or three dollars.  Officer Mullaly testified that the area was"[f]airly well lit."
>
> Officer Jonathan Sam, a member of the NOPD First District COPS (Community Outreach Policing Unit) assigned to the Iberville Housing Development, testified that he heard the 64G call and that the suspect was heading toward the housing development; he went to the area and searched for the robber, whom he found.  Officer Sam said that from North Robertson, he turned south onto Iberville Street.  He saw the subject matching the description walking southbound in the 1500 block of Iberville Street.  He turned into a driveway, stopped Williams, and detained him.  The officer informed Williams of his rights and told him he was under investigation relating to an armed robbery.  Officer Sam stated that he patted Williams down for the sake of officer safety, but found no gun.  The officer described Williams as wearing a "[s]ky blue shirt, khaki, khaki pants, with a Yankees baseball cap," the same description as he had heard on his radio.  He also testified that he was able to confirm the tear drop tattoo on Williams' face, as well as a tattooed cross.  He notified the dispatcher and radioed Officer Michael Wynn.

The officer placed Williams by the car and waited.  He explained that Officer Wynn was needed to conduct a show-up identification.  Officer Sam identified Williams in court.

On cross-examination, Officer Sam admitted that Williams did not attempt to flee when he was being stopped, and he was not aggressive towards him.  The officer said that he did not recover any footage from the surveillance cameras in the Iberville Housing Development.  He admitted that he did not find a gun, a necklace, a Blackberry cell phone, or Arizona Diamondbacks baseball cap during the pat-down.

Michael Wynn[1] testified that he was currently enrolled in law school in New York, and had flown to New Orleans to testify.  Mr. Wynn testified that he became involved in this case the day after Mr. Hill first called 911.  The dispatcher informed him that the armed robbery victim, Mr. Hill, had just spotted the robber from the day before.  He met the victim and broadcast the description over the radio ("sky blue polo shirt, khaki pants, and a black Yankees hat.")  Mr. Wynn stated that Officers Jonathan Sam and Lashon Jackson had detained Williams.  Mr. Wynn relocated the victims, Michael Hill and Che Jones, to Williams' location at North Derbigny and Canal Streets for a show-up identification.  The former officer said that he told the victims that he was taking them within a visible distance of a subject who had been stopped in order to see whether he was the robber.  Mr. Wynn stated that he did not coerce, threaten, or promise the victims anything in order for them to make an identification.  Mr. Hill confirmed that Williams was the man who had robbed him the day before.  Williams was arrested at that point.  When Mr. Wynn searched Williams incident to his arrest, he found two Blackberry cell phones and an iPod in his right front pocket.  Mr. Hill confirmed that one of the cell phones belonged to him.  The other one did not belong to either Mr. Hill or Mr. Jones.  The defense stipulated that Williams was wearing the clothes about to be introduced at trial when he was arrested.

[1]At the time of trial, Mr. Wynn was no longer an officer with the NOPD.

On cross-examination, Mr. Wynn clarified that the victims were in the back of his police car, and he was about thirty feet from Williams' location when the two victims made their identification.

On redirect examination, Mr. Wynn testified that Mr. Hill spontaneously identified his cell phone.  Mr. Wynn said that when he turned on the phone, "Hello Michael" appeared on the screen.

Officer Anthony Bakewell testified that, after Williams' arrest, the detective assigned to the case was not available.  He said that he applied for a search warrant of Williams' home on the same day as the arrest and that warrant was executed at 1581 Iberville Street, apartment G.  The officer testified that he presented the warrant to the female leaseholder and hoped that he would get some cooperation.  He was shown Williams' bedroom, which they searched, finding no gun.  Williams' father then produced a handgun (a forty-caliber Smith & Wesson handgun).  On cross-examination, defense counsel asked where the handgun was kept, and he replied that he believed that it was on a duty belt for the father was a security guard

at the Superdome. Officer Bakewell said that he recovered nothing from Williams' room.

Michael Hill, who stated that he was twenty-seven years old, testified that he grew up in Birmingham, but that family moved around because his father was a newscaster. He denied having a felony conviction. On 21 August 20010, he was living at 1801 Canal Street and working at Café Du Monde in the Riverwalk.[2] He mostly "bussed" tables, but he was trying to learn all the jobs so that he could move up. In 2010, he and Che Jones had been friends for a year or two. On the night of 21 August 2010 at about 11:00 p.m., he was walking home from work with food from McDonald's. Mr. Jones and his girlfriend were walking with him. They were going to play "Resident Evil" on X-Box. He was at North Villere Street, close to the Iberville Housing Development, when the subject walked up. The subject started talking to Mr. Jones. Mr. Hill said that street lights were present, and it was well-lighted enough to see people standing on the sidewalk. When he saw the subject talking to Mr. Jones, he turned around and moved back toward Mr. Jones and the subject. At that point Mr. Jones was emptying his pockets, but he had nothing in them. The robber, later identified as Williams, then turned to Mr. Hill and told him to empty his pockets; Mr. Hill said "no," and that he was not going to give the robber anything. The subject then said that he would kill him. Mr. Hill said that he decided to comply "[b]ecause he reached in like this, gun right, gun in his back pocket. [']Say you don't think I'll kill you out there?[']"

---

[2] Riverwalk is a shopping center close to the Mississippi River near Canal Street.

Mr. Hill testified: "I didn't see the actual gun but I saw the handle." He said the handle of the gun was black in color. He stated that the subject was wearing black jean shorts with a maroon shirt (with some white); he could not recall the color of the robber's boots. He gave in and emptied his pockets. He tried to keep his Blackberry cell phone, but he had to turn it over too. He said the robber also had a tear drop tattoo under his right eye and tattoos on his arm. The robber took his wallet (but gave it back when there was no money in it) and took the sterling silver necklace he was wearing. The robber then walked toward the housing development. Mr. Hill went to a car lot and called 911.

Mr. Hill stated that he was walking home the next day, and he heard his music playing on his Blackberry cell phone that had been taken. He spotted the robber walking toward the project, listening to Mr. Hill's music. The cover on the Blackberry cell phone was very distinctive. The subject then quickened his pace toward the project; he was not wearing the same clothes as during the robbery the day before. Mr. Jones was waiting for him at his apartment, and he went to follow the robber while Mr. Hill called the police. Mr. Jones found the robber sitting on his porch. Mr. Hill and Mr. Jones were able to identify Williams as the robber when the officers took them to where he had been arrested. Mr. Hill identified his Blackberry cell phone. He said that the officers recovered only his cell phone but not his eight gigabyte card that was in it or his sterling silver necklace. The state asked Mr. Hill if the man who robbed him was in the courtroom, and he asked if he could stand. The state then tendered the witness.

Just as defense counsel was about to start cross-examination, defense counsel said: "One second, Your Honor." Then Mr. Hill said: "I'm sorry, is it too late?" The court told the victim he could say something. Mr. Hill then said: "He's right there in the second chair in the front." The court then asked if the ADA wanted to re-open direct examination, and the state answered affirmatively. The court instructed defense counsel to take a seat because the court was re-opening direct examination. The ADA asked if the victim could see the robber in the courtroom; defense counsel objected that the question had been asked and answered. The trial court overruled the objection. Mr. Hill replied that the robber was seated next to the gentleman with the suit and a maroon bowtie. The ADA then tendered the witness.

On cross-examination, Mr. Hill acknowledged that he was part of the Volunteers of American Program, where he received treatment, resided, and had to pay rent from money earned at a job. He stated that Mr. Jones did not work. When asked why Mr. Jones wanted to go by Villere Street that night, the state's objection as to hearsay was sustained. He said that he saw Williams trying to rob Mr. Jones, and then the robber turned to him, but he would not give everything up. Mr. Hill said that Williams "reached for" the gun, and he "saw the handle." When counsel asked if it was a wooden handle, Mr. Hill replied: "It was black, I couldn't tell you if it was wooden or not, I don't play with guns." After a bench conference, counsel asked about his description he gave to an officer than night, which included an Arizona Diamondbacks hat and brown boots. Mr. Hill remembered seeing his Blackberry cell phone and identifying it. He acknowledged that the tear drop tattoos were common in that area. He stated Mr. Jones was not in court, and he did not know where Mr. Jones was. He said that he thought the Saints had won because it was wild that night, with many people on the streets. He stated that he made the 911 call and told the operator that the robber took his cell phone and his silver chain. He also described the robber.

On redirect examination, Mr. Hill said that he was not sure if he had his headphones that night, but his cell phone was in its case. He testified that he saw the handle of the gun. When he asked what the handles looked like, he replied: "It was black. I may have said it was wooden that night but to tell you the truth I know it was black." Mr. Hill further stated: "I have no doubt in my mind it was black." He said that tear drop tattoos have a special meaning to him. (The ADA instructed him not to explain the significance.)

The defense called Eddie Foley, III, Williams' father, as a witness. Mr. Foley testified that he lived at 1581 Iberville Street, and his son resided with him. He said that he was at the residence when the officers executed the search warrant and seized his service revolver, which is a silver (nickel-plated) and black forty caliber Smith & Wesson. He had the gun because he was a commissioned officer at the Superdome and had the paperwork for the gun. Mr. Foley said that the gun had only been fired when he was qualifying. He stated that Williams had never touched the gun, asserting that he had no right to it. He said that he had a dead bolt on his bedroom door, and the gun was kept in the bedroom because Williams' young daughters and his mother's brother, a recovering drug addict, were living with him. Mr. Foley denied that Williams had an Arizona Diamondbacks baseball

10

cap and that he had never seen Williams wearing a baseball cap; further, Williams had no boots and no bandanas. Mr. Foley said that the officers did not sweep his home for fingerprints. The officers came in and handed him the search warrant. One officer asked about guns, and he and the officer went upstairs. Mr. Foley unlocked the bedroom door, entered, lifted the mattress, and retrieved the gun. There was no box for it, but he had a lock on the weapon while stored under the mattress. The officer seized the gun. After he was shown photos of his son, Mr. Foley testified that Williams had tattoos on his arm, the side of his neck, a star on his forehead along with a cross, the names of his brother's kids, and tear drops.

On cross-examination, Mr. Foley again said that he had never seen Williams in a baseball cap. The state noted that his son was wearing a baseball cap when he was arrested, to which Mr. Foley said that he was not present when his son was arrested.

The defense called Officer Mullaly, who testified that he interviewed both victims. The officer stated that Mr. Hill did not tell him that the robber threatened his life. He said that when he initially spoke to Mr. Hill he did not mention that he observed a handgun or that the robber had tattoos on his arms. When he was asked if Mr. Jones identified the handgun, he replied: "Correct." When counsel asked for Mr. Jones' description of the gun, the state objected because it called for hearsay. Defense counsel stated that Mr. Jones was an unavailable witness and that trial court overruled the objection. After a bench discussion, the court ruled that he could ask the question. Officer Mullaly then stated that Mr. Jones described it "as chrome with a brown or wooden handle." When asked if the victims ever said that the gun was black during that interview, the officer answered negatively. The officer stated that neither victim described the surroundings or the crowded streets.

On cross –examination, Officer Mullaly testified that both victims said that Williams reached with his right hand into his right front pocket. When the officer was asked if he recalled that Mr. Jones said that the gun had a wooden handle, but that he did not recall what, if anything Mr. Hill said about the handle, he replied: "Correct."

On redirect-examination, Officer Mullaly testified that Mr. Hill "didn't describe a gun." Mr. Hill indicated that he saw the robber's "right hand in his right front pocket as if he was holding a gun."[19]

### Petitioner's Claims

### Denial of Motion for New Trial

Petitioner argues that the trial court erred in denying his motion for new trial. Petitioner contends that the trial court erroneously admitted the victim's identification of petitioner as well

---

[19] St. Rec. Vol. 2 of 4, 4th Cir. Order, 2012-KA-0835, 4/10/13; State v. Williams, 12-083 (La. App. 4th Cir. 2013).

as an alleged threat petitioner had made to his victim.  He also appears to contend that the trial court erred in finding inadmissible his post-arrest statement that he found the phone.

In the last reasoned state court judgment addressing petitioner's claim that the trial court erred in denying his motion for new trial, the Louisiana Fourth Circuit rejected the claim finding no abuse of discretion.[20]  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

As the State correctly points out, to the extent that petitioner's claims that the state courts misapplied state law (specifically La. Code Crim. art. 851), his claim is not cognizable in a federal habeas corpus proceeding.  Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) (holding that a state court's denial of a motion for a new trial under La.Code Crim. P. art 851 was not reviewable by a federal court on habeas review); accord Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *6 (E.D.L.A. April 26, 2007)(same).  A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  Narvaiz v. Johnson, 134 F.3d 688, 695-96 (5th Cir. 1998) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d. 606 (1990), and citing West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); accord Turner v. Johnson, 46 F.Supp.2d 655, 674 (S.D. Tex.1999).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67-68; see also Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a

---

[20]Id.

disagreement as to state law is not cognizable on federal habeas review).  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law simply will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107,119; Prieto v. Quarterman, No. Civ. SA01CA11450G, 2006 WL 4059282, at *5 (W.D. Tex. Dec. 18. 2006), aff'd, No. 07-70001, 2008 WL 4218822 (5th Cir. Sept. 15, 2008).

Similarly, petitioner's challenges to the trial court's evidentiary rulings are not cognizable unless the rulings ran afoul of a specific constitutional right or rendered petitioner's trial fundamentally unfair.  Specifically, "[i]n habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  Claims concerning the allegedly erroneous admission of evidence may support federal habeas corpus relief only if the state court evidentiary rulings violate due process in such a way as to render the criminal proceedings fundamentally unfair.  Lisenba v. California, 314 U.S. 219, 236-37 (1941); Gonzales v. Thaler, 643 F.3d 425, 430 (5th Cir. 2011); see also Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right").  "Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial."  Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); accord Gonzales, 643 F.3d at 430; Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

Petitioner claims that the trial court erred in allowing the victim to testify regarding an alleged threat made by petitioner.  Michael Hill testified that the reason he complied with the robber's demands to empty his pockets was that the robber said, "Say you don't think I'll kill you

out here."[21]   The trial court allowed the testimony over defense counsel's objections.  Petitioner

claims that the threat was not included in any police report or testified to previously at any hearing

and, further, was not provided pursuant to petitioner's discovery request.  Petitioner asserts the

testimony should have been excluded due to the state's alleged discovery violation.  In support of

his claim, petitioner relies on La. Code Crim. art. 716, which provides in pertinent part that the

prosecution "inform the defendant of the existence, but not the contents, of any oral confession or

statement of any nature made by the defendant or any codefendant which the district attorney

intends to offer in its case in chief at the trial, with the information as to when, where, and to whom

such oral confession or statement was made."

     The Fourth Circuit, in rejecting petitioner's claim on direct appeal explained as follows:

>      We do not find that La. C.Cr.P. art. 716, which relates to the statements and
> confessions the state intends to introduce into evidence, applies to Williams' verbal
> threat to Mr. Hill because he was not emptying his pockets as the other victim had.
> Mr. Hill was testifying to what happened on the night he was robbed.  The trial
> court did not err by overruling the defense objection.[22]

     Petitioner has not alleged a violation of the United States Constitution.  Petitioner's claim

is based on a purported state discovery violation.  However, there is no general federal

constitutional right to discovery in a criminal case, and, therefore, a claim that a prosecutor violated

state discovery rules simply is not cognizable in federal habeas review.  Weatherford v. Bursey,

429 U.S. 545, 559 (1977); Pruett v. Thaler, 455 F. App'x 478, 486 (5th Cir. 2011); Lorraine v.

Coyle, 291 F.3d 416, 441 (6th Cir. 2002); Burns v. Lafler, 328 F. Supp. 2d 711, 723 (E.D. Mich.

2004).  As such, petitioner's claim that the state courts violated state law is not reviewable in this

proceeding.

---

[21]St. Rec. Vol. 3 of 4, Trial Transcript, p. 38, 9/27/11.
[22] St. Rec. Vol. 2 of 4, 4th Cir. Order, 2012-KA-0835, pp.17-18 4/10/13; State v. Williams, 12-083 (La. App. 4th
Cir. 2013).

Petitioner next claims that the trial court erred in failing to suppress Hill's in-court identification of Williams. Williams contends that initially Hill was unable to identify him at trial. Williams argues that the prosecution made an improper gesture that identified Williams as the defendant and only thereafter was Hill able to make an in-court identification. Petitioner contends that the suggestive identification violates due process.

The Fourth Circuit rejected petitioner's claim on direct appeal. In doing so, the court addressed both the suggestiveness of the identification and its reliability. The court explained:

> Although asserted by defense counsel the transcript does not reflect any gesture by the ADA. After asking Mr. Hill if he saw the robber in the courtroom, the witness asked if he could stand. The ADA then asked Mr. Hill that if he could not see the robber in court, was he sure the day after the robbery when he spotted Williams on the street and called the police? Mr. Hill answered affirmatively. The trial court judge was present and arguably saw what transpired, and the court re-opened direct examination so that Mr. Hill could make his identification. Mr. Hill testified that he got a good look at the robber, and he gave a good description to the police. Mr. Hill said that he was 100% sure that Williams, whom he identified the day after the robbery, was the man who took his Blackberry cell phone and chain. He spotted Williams walking on the street, and he identified Williams after he had been apprehended because of Mr. Hill's description; his identification was reliable. The trial court did not err by allowing Mr. Hill to take the time to look around the courtroom (and not be told to look at the defense table) and actually see the robber before identifying him.[23]

Petitioner's claim is somewhat novel in that he does not contend that the in-court identification was tainted by suggestive pretrial identification procedures. Rather, he contends that the in-court identification was tainted by suggestive procedures at trial.

In determining whether an identification procedure violates due process, the court considers: (1) whether the identification procedure was unduly suggestive; and (2) if so, did the procedure pose a "very substantial likelihood of irreparable misidentification." Perry v. New Hampshire, 565 U.S. 228, 232 (2012). In Manson v. Brathwaite, 432 U.S. 98 (1977), the United

---

[23] Id. at pp. 16-17.

States Supreme Court outlined several factors that may be considered when reviewing the reliability of a witness's identification: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself.   Manson, 432 U.S. at 114-16; Passman v. Blackburn, 652 F.2d 559, 570-71 (5th Cir. 1981); Herrera v. Collins, 904 F.2d 944, 947 (5th Cir. 1990).

There is no evidence of record demonstrating that the prosecution made any gesture to assist Hill in identifying petitioner at trial.  Further, while petitioner suggests that Hill may have been able to identify him as the robber once petitioner's two attorneys stood after the prosecution finished its direct examination of Hill, the state correctly points out that petitioner was represented by three individuals.[24]  Thus, petitioner would not have been the only person remaining seated at defense table at the time of Hill's identification of him.  As such, there is simply no evidence supporting petitioner's claim of suggestiveness.

Furthermore, both Hill's initial identification and in-court identification of Williams were reliable.  Hill gave a description of the robber to law enforcement the night of the robbery.  He testified that the street was lit up well enough the see.  When Hill saw petitioner the following day, he was one hundred percent certain that he was the person who robbed him.  Hill's in-court identification of Williams was consistent with his previous identification of him.  Petitioner has not demonstrated that the state courts' rulings were contrary to, or an unreasonable application of, Supreme Court law.

---

[24]St. Rec Vol. 3 of 4, Trial Transcript, p. 1.

As a final issue related to his motion for new trial claim, in his application for post-conviction relief, petitioner includes a statement that "the trial court had erred in failing to allow the arresting officer to testify to a statement made by the defendant immediately upon being stopped by the officer."[25] He, however, did not brief the claim. Furthermore, he did not brief the argument on his direct appeal.

The state argues that petitioner's claim is procedurally barred. For the following reasons, the state is correct.

The United States Fifth Circuit Court of Appeals has explained:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001)(citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, the state courts denied petitioner's claim that the trial court erred in finding inadmissible his post-arrest statement to law enforcement that he found the phone. The Fourth Circuit found as follows:

Although defense counsel asserted as error the trial court's failure to allow the arresting officer to testify as to what Williams said immediately after being

---

[25]Rec. No. 4, p. 18.

stopped by the police (that he found the cell phone), no argument on the point is made. Defense counsel notes that the first two errors were briefed in the first assignment of error, and that the insufficiency of the evidence (the fourth error noted) would be briefed in the second assignment of error. Assignment of error that are not briefed are deemed abandoned. Rule 2-12.4, Uniform Rules-Courts of Appeal; see State v. LeBlanc, 10-1484, p. 30 (La. App. 4 Cir. 9/30/11), 76 So.3d 572, 591, writ denied, 11-2300 (La. 11/18/11), 75 So.3d 446.

We find no merits to the assignment of error. [26]

Petitioner raised this claim in his application for post-conviction relief. The trial court denied the application without reasons. Thereafter, the Louisiana Fourth Circuit found no error in the trial court's denial but offered no further reasons for its ruling. The Louisiana Supreme Court also offered no stated reasons for its denial. Thus, considering the last reasoned decision on this issue, the Louisiana Fourth Circuit on direct appeal declined review of petitioner's claim related to his post-arrest statement that he found the cell phone on procedural grounds that petitioner had failed to brief the issue.

Federal courts have found that the procedural rule invoked in this case, Rule 2-12.4, is an "independent" and "adequate" state rule to support a procedural bar in federal court. Robinson v. Cain, Civ. Action No. 15-1551, 2016 WL 6902114, at *7 (E.D.La. Oct. 25, 2016), adopted, 2016 WL 6892870 (E.D.La. Nov. 23, 2016); Boyer v. Cain, No. 14-CV-0914, 2016 WL 1212410, at *4-5 (W.D. La. Jan. 14, 2016); Williams v. Cain, No. 12-493, 2014 WL 2465542, at *3-4 (M.D. La. May 30, 2014).

Where, as here, the procedural rules invoked by the state courts are "independent" and "adequate, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). However, "[t]o establish cause for a

---

[26] St. Rec. Vol. 2 of 4, 4th Cir. Order, 2012-KA-0835, p. 18, 4/10/13; State v. Williams, 12-083 (La. App. 4th Cir. 2013).

procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner makes no attempt to establish "cause" for the procedural default of this claim. Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent." See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998). However, the Court notes that it is unclear whether the exception even applies at all to cases, such as this one, in which the defaulted claim relates merely to a matter concerning a noncapital sentence.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced. Id. at 265-66. The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received." Id. at 264. However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit. Dretke v. Haley, 541 U.S. 386 (2004). In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors. Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding such matters, petitioner has not shown that he was legally ineligible for the sentences imposed. Accordingly, for the foregoing reasons, the undersigned finds that petitioner's claim that the trial court erred in finding inadmissible his post-arrest statement that he found the phone is procedurally barred.

## Sufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence to support his conviction. Petitioner does not dispute that the State established the elements of armed robbery; rather, he argues that it failed to show that he was the perpetrator of the crimes. Petitioner argues that only one of the two victims testified at trial and that victim was unable to identify petitioner without assistance.

On direct appeal, the Louisiana Fourth Circuit denied Petitioner's claim of insufficient evidence on the merits. Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that Williams has made no such showing.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt." Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 567 U.S. 37, 132 S.Ct. 2060, 2062 (2012); see also Coleman v. Johnson, 566 U.S. 650, 132 S.Ct. 2060, 2062 (2012)(per curiam).

Petitioner was charged with armed robbery (count one) and attempted armed robbery (count two).  Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. § 14: 64(A); State v. Thomas, 13 So. 3d 603, 606 (La. App. 5th Cir. 2009).  To convict Williams of armed robbery, the state was required to prove beyond a reasonable doubt all elements of the statute.  State v. Cotton, 646 So. 2d 1144, 1145-46 (La. App. 5th Cir. 2008).  Attempted armed robbery is the specific intent to take something of value from another person or in his control by use of force or intimidation while armed with a dangerous weapon; and the perpetrator does or omits an act for the purpose of and

tending directly toward the robbery. La. Rev. Stat. § 14:27; State v. Johnson, 466 So.2d 741, 744 (La. App. 4th Cir. 1985).

In addition to proving the elements of the crimes, the State was also required to prove the defendant's identity as the perpetrator. State v. Fuller, 980 So. 2d 45, 49 (La. App. 5th Cir. 2009). In doing so, the "State is required to negate any reasonable probability of misidentification in order to carry its burden of proof." Id. (citing State v. Ingram, 888 So. 2d 923, 926 (La. App. 5th Cir. 2004)). Louisiana courts have held that a positive identification by one witness is enough to support a conviction of armed robbery. Id. Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination. State v. Thomas, 13 So. 3d 603, 607 (La. App. 5th Cir. 2008).

In the instant case, the state presented testimony of one of the victims, Michael Hill, who testified that he and his friend Che Jones were walking near the Iberville Projects on August 21, 2010, when a man with tear drop tattoos under his right eye and tattoos on his arm stopped Jones. Jones emptied his pockets and told the perpetrator he did not have anything. The perpetrator then turned to Hill and told Hill to give him everything he had. When Hill initially refused, the perpetrator reached in his back pocket for a gun and threatened to kill Hill. Hill described the firearm's handle as black. The robber took Hill's Blackberry phone and a silver necklace. The following day, in the same area as the robbery occurred, Hill saw the robber carrying Hill's phone. Hill testified he was one hundred percent certain it was the same man who robbed him. Minutes later, Hill told Jones who then followed the perpetrator. Hill identified petitioner to law enforcement as the man who robbed him. When the prosecution asked whether the robber was in the courtroom, initially Hill was not able to make an identification. He, however, eventually identified petitioner.

Officer Mullaly, who interviewed the victims the night of the incident, testified that both victims described tear drop tattoos and that one of the victims described the gun as having a brown wooden handle.   Michael Wynn, a former officer, testified that he brought Hill and Jones to the scene of petitioner's detention on August 22, 2010, and that Hill confirmed petitioner was the person who had robbed him.  At the time of his arrest, petitioner was found to be in possession of a Blackberry phone which Hill identified as belonging to him.  Law enforcement executed a search warrant at the apartment at which petitioner lived with his father.   Law enforcement seized petitioner's father's service weapon, a 40 caliber Smith & Wesson firearm.

On the other hand, petitioner's father, Eddie Foley, III, testified that petitioner did not have access to his firearm and did not own the clothing the robber was described as wearing.  Officer Mullaly testified that Hill did not tell him he observed a handgun or that petitioner had threatened him.  Mullaly testified that it was Jones who described the handgun as chrome with a wooden or brown handle and that it was in the robber's front pocket.  He explained that Hill said he saw petitioner's hand in his right front pocket as if he were holding a gun.

Given the testimony, the question was one of credibility.  However, where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Moreover, the fact that the Hill was the only witness positively connecting petitioner to the crime is not determinative. A single eyewitness identification, if found credible by the trier of fact, is constitutionally sufficient to prove identity and support a conviction. See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. A rational trier of fact could easily have found that Williams was the perpetrator who robbed Hill and attempted to rob Jones. The jury was well within its authority to make credibility determinations as to the testimony of the witnesses. It is not for this court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Therefore, petitioner cannot show that the state court's decision rejecting his sufficiency of the evidence claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to relief as to this claim.

## Excessive Sentence

Petitioner claims that his sentences are constitutionally excessive. He contends the trial judge did not weigh the sentencing factors but rather sentenced him based on Williams' decision to proceed to trial and the sentencing guidelines. He further claims the state court failed to consider any mitigating factors such as that there was no actual violence during the armed robbery, very little was taken, and the Blackberry cell phone was recovered.

The State responds that petitioner has failed to demonstrate that his sentence is grossly disproportionate to the severity of his offenses in light of his prior offense.

Petitioner raised this issue on direct appeal. The Louisiana Fourth Circuit found that Williams' sentences were the minimum sentences for a second offender and he did not present any evidence to the trial court supporting mitigating circumstances. The Fourth Circuit further found that petitioner did not prove by clear and convincing evidence that he is exceptional and did not show unusual circumstances existed. Finding no basis was shown for a downward departure, the Fourth Circuit denied relief.[27]

To the extent Williams is arguing that his sentences are excessive under Louisiana law or that the trial court failed to comply with state sentencing rules, his claim is not cognizable in this federal proceeding. Smith v. Cain, 253 F.3d 700, 2001 WL 498441, at *1 (5th Cir. Apr. 9, 2001). Therefore, even if Williams' sentences were excessive under the Louisiana Constitution or if the trial court failed to comply with state law concerning sentencing procedures, which are issues this court need not and does not reach, those errors would not be correctable in a federal habeas corpus proceeding. See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ( ". . . a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus. . . . [T]his Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.").

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law. Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp.2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this court must determine

---

[27] St. Rec. Vol. 2 of 4, 4th Cir. Order, 2012-KA-0835, pp. 19-22, 4/10/13; State v. Williams, 12-083 (La. App. 4th Cir. 2013).

whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24).  A sentence within statutory limits will not be upset by a federal habeas court, unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449-50 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)).  As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases.  Ewing v.

California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

Louisiana law provides that a person convicted of armed robbery shall be imprisoned at hard labor for not less than ten (10) years or more than ninety-nine (99) years, without benefit of parole, probation or suspension. La. Rev. Stat. § 14:64(B). The penalty for a conviction of attempted armed robbery is not less than five (5) and not more than forty-nine and one half (49½) years at hard labor, without benefit of parole, probation or suspension of sentence. La. Rev. Stat. §§ 14:64 and 14:27. Louisiana's habitual offender provision provides, that for a second offense, the "sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." La. Rev. Stat. § 15:239.1(A)(1). Thus, the sentencing range for a second felony offender with an underlying convictions for armed robbery is forty-nine and one-half (49 ½) years to one hundred and ninety-eight (198) years. Id; La. Rev. Stat. § 14:64. The sentencing range for a second felony offender convicted of attempted armed robbery is twenty-four and one-half (24 ½) years to ninety-nine (99) years at hard labor, without benefit of parole, probation or suspension of sentence. La. Rev. Stat.§§ 14:27, 14:64; § 15:529.1. Williams' sentences of imprisonment of 50 years as to count one for armed robbery and 25 years as to count two for attempted armed robbery were within the statutory range. Thus, this Court will consider proportionality when compared with sentences imposed in similar cases.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" Ewing, 538 U.S. at 23 (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The

Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

Before imposing the sentences, the state trial court gave specific reasons to support the sentences imposed. The trial court explained that she had taken into account petitioner's relative youth balanced against the facts of the case, and the fact that he had rejected a plea bargain. The trial court explained that above all it was mandated under La. Rev. Stat. § 15:529.1 to impose the sentence.[28]

A survey of Louisiana cases in the public domain establishes that Williams' sentences were not out of line with sentences imposed upon similarly situated defendants. See e.g., State v. Sam, 105 So. 3d 988 (La. App. 5th Cir. 2012)(49.5 year sentence imposed on a second felony offender who committed armed robbery as a teen); State v. Davenport, 978 So.2d 1189 (La. App. 2d Cir. 2008)(50 year sentence imposed on a second felony offender who committed armed robbery); State v. Thomas, 962 So.2d 1119 (La. App. 2d Cir. 2007)(same); State v. Carroll, 926 So.2d 827 (La. App. 2d Cir. 2006)(75 year sentence for 21 year old second time habitual offender previously convicted of simply burglary); State v. Burton, 746 So.2d 74 (La. App. 4th Cir. 1999)(60 year sentence for second time habitual offender who was a less active participant in armed robbery); State v. Forde, 482 So.2d 143 (La. App. 4th Cir. 1986)(50 year sentence for second felony offender convicted of armed robbery); State v. Batts, 979 So.2d 684 (La. App. 2d 2008)(26 year sentence for second felony offender convicted of attempted armed robbery); State v. Gass, 747 So.2d 715 (La. App. 2d Cir. 1999)(24.75 years for second felony offender convicted of attempted armed robbery); State v. Sylvas, 558 So.2d 1192 (La. App. 1st Cir. 1990)(25 year sentence for second offender convicted of attempted armed robbery).

---

[28] St. Rec. Vol. 3 of 4, Sentencing Transcript, p. 13, 2/15/12.

Williams has not shown that his sentences were grossly disproportionate or unconstitutionally excessive under the circumstances of his case or in comparison with other similar cases in Louisiana. The state courts' denial of relief on this issue was neither contrary to established Supreme Court case law nor an unreasonable application of Supreme Court precedent. Williams is not entitled to relief on this claim.

### Right To Confront Witnesses

Petitioner contends his right to confront witnesses was violated when he was not able to confront Che Jones and cross-examine him at trial. He claims that Detective Mullaly testified about the robbery and that Jones saw the robber had the gun in his right front pocket. Petitioner contends that the jury became poisoned and was able to assume petitioner's guilt without hearing from Jones.

Petitioner raised his confrontation claim on direct appeal. The Fourth Circuit Court of Appeal determined petitioner failed to preserve the issue as he did not raise a contemporaneous objection, citing La. Crim Code art. 841, which provides that an "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."[29]

Petitioner raised the same claim in his application for post-conviction relief. The trial court denied the application without reasons. The Louisiana Fourth Circuit found no error in the trial court's denial providing no further reasons for its ruling. The Louisiana Supreme Court also offered no basis for its one word denial. Thus, the Louisiana Fourth Circuit opinion on direct appeal is the last reasoned state court decision. The Fourth Circuit denied review of the confrontation claim on procedural grounds that petitioner sought review without a contemporaneous trial objection in violation of La. Code Crim. art. 841.

---

[29] St. Rec. Vol. 2 of 4, 4thCir. Order, 2012-KA-0835, p. 25, 4/10/13; State v. Williams, 12-083 (La. App. 4th Cir. 2013).

It is clear that the state courts rejected petitioner's claim on procedural grounds and those grounds are clearly independent and adequate state procedural rules. Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977); Bowie v. Cain, 33 F. App'x 705, 2002 WL 432675, at *2 & n. 9 (5th Cir. Mar. 7, 2002).

Petitioner makes no attempt to argue against the procedural bar. However, petitioner makes a passing reference that his counsel rendered ineffective assistance. In an abundance of caution, the Court will assume that petitioner is arguing, at least implicitly, his counsel's failure to lodge an objection at trial stands as cause for the default.

Initially, the law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986). Additionally, Williams' ineffective assistance of counsel claim based on the failure to object is itself unexhausted and technically in procedural default as Williams did not pursue it on post-conviction review. He has not suggested any cause for his failure properly and timely to raise that claim in the state courts. Therefore, as the United States Supreme Court has held, the defaulted ineffective assistance of his counsel claim cannot and does not constitute cause for the failure properly to raise the other defaulted claims. Edwards v. Carpenter, 529 U.S. 446, 452-54 (2000). Having failed to show cause, the Court need not determine whether prejudice exists.

As previously addressed, petitioner has not met the fundamental miscarriage of justice exception to procedural default. Therefore, petitioner's confrontation claim must be dismissed with prejudice without review on the merits.

## **Ineffective Assistance of Counsel**

Petitioner raises various claims of ineffective assistance of counsel in his petition. Specifically, petitioner contends his counsel rendered constitutionally ineffective performance in failing to: (1) present a defense of actual innocence; (2) adequately investigate the case; (3) challenge Hill's credibility; (4) assert a sufficiency of the evidence claim on appeal; and 5) move to sever counts.

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S.

____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984).  As the state court noted, Strickland established a two-prong test for evaluating such claims.  Specifically,

a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little, 162 F.3d at 860. Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The petitioner first claims that he suffered ineffective assistance of counsel when counsel failed to present an actual innocence defense. The Court finds no merit to this claim. To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one. See, e.g., Otero v. Louisiana, Civ. Action No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); Higgins v. Cain,

Civ. Action No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011). As the state points out in its response, defense counsel attempted to show that Williams was not that robber by calling Williams' father, Eddie Foley, to testify in petitioner's defense. Foley testified that Williams did not have access to Foley's gun. He also testified that petitioner did not own the clothing the robber was described as wearing. Williams fails to explain how his counsel's presentation was inadequate. Williams simply claims he was at home, one block away from the robbery, at the time it occurred. To the extent he is attempting to claim his counsel should have presented an alibi defense, petitioner fails to demonstrate that any witness was available to testify, and would have in fact testified that petitioner was home at the time of the robbery; nor does petitioner suggest that he was willing to testify. See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002)(for an ineffective assistance of counsel claim relating to failure to call witnesses, petitioner must show witnesses would have testified at trial and that the testimony would have been favorable).

Petitioner next claims that his counsel failed to adequately investigate the case. He claims that there is a reasonable probability that the results of the trial would have been different had his counsel done an investigation of the facts surrounding the relationship between the "eyewitness, the decedent and Mr. Williams."[30]

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense. In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ.

---

[30] Rec. No. 4, p. 35.

Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

The state correctly points out that Williams offers no explanation as to how his counsel's performance was inadequate. He offers no evidence that his counsel actually failed to investigate the relationship between the victims and Williams. Nonetheless, even if petitioner were able to establish that fact, that alone would not suffice. Petitioner must further establish that the investigation would have resulted in a reasonable probability that the outcome of the trial would have been different. That defect is fatal, because a petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

Petitioner further claims that his counsel was ineffective in failing to challenge Hill's credibility. Petitioner claims that Hill's testimony regarding the gun was inconsistent with the statements he made to law enforcement at the time of the investigation. Petitioner argues that Hill told the detective that the robber had a gun in his front pocket whereas at trial he testified it was in his back pocket. He also claims his defense counsel failed to present to the jury that Hill could not identify petitioner at trial.

The record shows that defense counsel attempted to attack Hill's credibility on cross-examination. Defense counsel elicited testimony from Hill that he was receiving treatment from the Volunteers of America program. His attempt to question Hill about Che Jones' purpose of going to Villere Street on the night of the robbery was blocked by the court. He further elicited that Hill did not hear the verbal exchange between Jones and the robber. Defense counsel

questioned Hill about his description of the gun. He also elicited testimony from Hill that tear drop tattoos were fairly common in the area. Thus, petitioner's claim that defense counsel failed to attack Hills' credibility is baseless.

While defense counsel did not question Hill about his in-court identification of Williams, the Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.

Petitioner has not met his burden with respect to his claim. The jury was present and was able to view Hill's initial difficulty in identifying petitioner. Petitioner has not shown that there is a reasonable probability that the outcome of the trial would have been different had his trial counsel questioned Hill about his in-court identification of petitioner.

Williams' next claim of ineffective assistance of counsel is that his counsel failed to raise the issue of sufficiency of the evidence on appeal. That claim is false. The record demonstrates that counsel raised three issues on appeal: (1) the trial court erred in denying the motion for new

36

trial; (2) the evidence was insufficient to support the convictions; and (3) the sentences imposed were excessive.[31]  Therefore, this claim fails.

In his final ineffective assistance of counsel claim, Williams claims that his counsel rendered constitutionally deficient performance in failing to file a motion to sever counts one and two.  He argues that allowing the state to try both counts together allowed it to prove less than had the counts been tried separately.  The state argues that petitioner has failed to demonstrate that a motion to sever would have succeeded and, as such, petitioner's related claim of ineffective assistance of counsel is meritless.

Under Louisiana law, ". . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."  La. Code Crim. P. art. 61.  The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection by the defense.  See State v. Brooks, 541 So.2d 801, 810 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); State v. Burnett, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1st Cir. 2008) (unpublished) (the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing State v. Joles, 492 So.2d 490 (La. 1986)) (addressing joinder of theft counts).  Thus, unless Williams can show that the charges were improperly joined, he fails to establish that his counsel erred in not moving to sever the counts.

Louisiana law provides for the joinder of criminal acts in one bill of information or indictment under certain circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or

---

[31] St. Rec. Vol.1 of 4, Appeal Brief, 2012-KA-0835, 7/13/12.

misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 permits joinder where "offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." La. Code Crim. P. art. 495.1, however, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

The charges in counts one and two against Williams were properly joined because the offenses were connected and constituted part of a common plan or scheme. Further, there was no requirement under state law that counts one and two in the bill of information against Williams be severed and tried separately as a matter of law. Williams was charged with three and eventually tried and convicted of two felonies in the bill of information. A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor." La. Rev. Stat. Ann. § 14:2. Felonies necessarily punished by confinement at hard labor are to be tried by a 12 person jury. La. Code Crim. P. art. 782. The armed robbery charge is defined by La. Rev. Stat. Ann. § 14:64 and shall be punished by confinement at hard labor. Similarly, attempted armed robbery defined by La. Rev. Stat. Ann. § 14:27 shall be imprisoned at hard labor.

Both counts were necessarily punishable with confinement at hard labor. Louisiana law did not require severance and instead allowed for their joinder in the same bill of information if the offenses are "of the same or similar character" or "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." For this reason, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La. App. 4th Cir. 1990)(two attempted armed robberies committed minutes apart were properly joined under art. 493 and tried together).

A review of the record reveals that Williams was not prejudiced simply because the offenses were tried together. Both of the charges against Williams were of similar character. The two offenses were not complex or confusing and were tied together through the common thread of Williams' activities in a single criminal episode. The common set of facts, transaction or scheme included the initial attempted robbery of Jones, followed immediately by the robbery of Hill, and Williams' detention and arrest the following day.

As such, Williams has shown no reason for his counsel to have moved the state trial court to sever the charges. Counsel does not act deficiently in failing to urge a meritless argument. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."). There was nothing more required of counsel. See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required "to file meritless

motions"). Denial of relief on this issue was not contrary to or an unreasonable application of Strickland.

For all of these reasons, it is clear that petitioner has not demonstrated that the state courts' decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.

## Evidentiary Hearing

Petitioner claims that he is entitled to an evidentiary hearing on his issues of ineffective assistance of counsel.

To the extent Williams suggests that the state courts erred in denying his post-conviction application without an evidentiary hearing, his argument would not entitle him to federal habeas corpus review or relief. It is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed in federal habeas cases. Id., at 320; Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Lackawanna v. County Dist. Attorney v. Coss, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).

In addition, Williams' request for a federal evidentiary hearing on his ineffective assistance claims must be denied. As discussed by the Supreme Court in Cullen v. Pinholster, 563 U.S. 170, 185-86 (2011), the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of Section 2254(e)(2). The statute restricts evidentiary hearings to those

instances in which the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. The *Cullen* Court recognized that when these requirements are not met, evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under Section 2254(d)(a). Id.

Thus, this court is limited to review of the evidence and record that was before the state courts that reviewed the merits of the claim at issue. Cullen, 563 U.S. at 181; Blue v.Thaler, 665 F.3d 647, 656 (5th Cir. 2011); Gallow v. Cooper, 505 F. App'x 285, 295-96 (5th Cir. 2012); Thomas v. Thaler, 520 F. App'x 276, 282-83 (5th Cir. 2013). In this case, Williams has not based his claims on a new, retroactive rule of law under the provisions of Section 2254(e)(2). He has made no showing of entitlement to relief from his conviction by clear and convincing evidence undermining his guilt. For the reasons discussed above, he has failed to establish his entitlement to federal habeas relief. Therefore, there is no basis for this court to grant an evidentiary hearing.

## Cumulative Error

Lastly, petitioner argues that he is entitled to relief when the errors in his case are considered cumulatively. However, the United States Fifth Circuit Court of Appeals has long expressed its disfavor of such claims in federal habeas corpus proceedings. For example, the Fifth Circuit has noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do. Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law. 28 U.S.C. § 2254. [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we

decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.

Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Nevertheless, the Fifth Circuit subsequently recognized such claims, albeit in a strictly narrow set of circumstances.  The Fifth Circuit noted:

> In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  Id., quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  *Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.*  Derden, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996) (emphasis added); see also Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) ("[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); Martinez Perez v. Dretke, 172 F. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was *no* error ... there was *no* cumulative error." (emphasis in original)).  In the instant case, petitioner has not shown that any of his individual claims have merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when he has not established that the cumulative effect of the alleged errors rendered his trial fundamentally unfair.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Steven D. Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[32]

New Orleans, Louisiana, this  6th  day of March, 2017.


DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[32] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

43